# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2022

Lyle W. Cayce
Clerk

No. 21-60611

Joshua Loftin,

*Plaintiff—Appellant*,

*versus*

The City of Prentiss, Mississippi;
Joseph Bullock, individually and in his official
capacity as Chief of Police of Prentiss, Mississippi;
Officer Stephen Jones,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:20-CV-62

Before Jones, Southwick, and Oldham, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*:

Officers of the Prentiss Police Department arrested Joshua Loftin for aggravated assault after Loftin and others told the officers that Loftin had shot Dontarious Walker. Loftin sued the officers and the City of Prentiss under 42 U.S.C. § 1983 for, among other things, arresting him without probable cause. His theory is that the officers lacked probable cause because, from the outset, he told them that he shot Walker in self-defense. The

officers and the City moved for summary judgment. The district court granted summary judgment on all claims and awarded fees to the defendants. We AFFIRM.

## I. Background

### A.

Joshua Loftin lived at 1609 Williams Street in Prentiss, Mississippi for ten years. While living at that address, he filed numerous noise complaints (more than 50) with the local police department, complaining that vehicles parked outside or passing by were playing music at a deafening volume, in violation of a city noise ordinance. The police responded to some of Loftin's complaints and even cited individuals on one or two occasions.

In Loftin's view, however, the police did not take his complaints seriously enough. He started taking matters into his own hands by confronting people who played loud music near his home. In March 2017, during one such confrontation, a man pulled a gun on Loftin and threatened to kill him. After that, Loftin started carrying a .357 Magnum for protection.

On April 17, 2017, Loftin was at home in the middle of the afternoon when he heard the distinctive buzz of a subwoofer reverberating through his walls. Loftin rushed to the window to see who was causing the ruckus and saw a green Mercury Marquis not far from his house. The Marquis departed, however, before Loftin could make it outside to confront whoever was driving the car. Soon after, Loftin hopped in his own car—.357 Magnum in hand—to see if he could locate the Marquis and ask the driver to stop playing his music so loudly.

Loftin came upon the Marquis at a crowded gas station and followed it from there. After tailing it for a short distance, Loftin honked his vehicle's horn and signaled the driver with his hand in an effort to get the other driver's

No. 21-60611

attention. At an intersection known as "Greasy Line," the other driver stopped and waved for Loftin to pull up next to him. Loftin then confronted the driver, later identified as Dontarious Walker, about the volume of his music, telling Walker that he had the Marquis's license plate number and that he would turn it over to the police if Walker did not desist in disturbing him. Walker allegedly responded by brandishing a Glock-like handgun and threatening to shoot Loftin. Loftin drew his gun and shot Walker in the arm. Both Loftin and Walker drove away; Loftin to his home and Walker to the hospital.

Upon arriving home, Loftin called the police and reported to the dispatcher that he had shot at a man driving a green Mercury Marquis after that man pulled a gun on him and that he needed to make a statement to the police. An unknown caller also reported the shooting three minutes earlier.[1]

Police Officer Stephen Jones responded to the dispatcher's call and headed towards Greasy Line. Officer Jones first arrived down the street from where the shooting occurred. Upon arriving, a man, later identified as Javarious McInnis, fled from the scene and, along the way, threw a handgun he was carrying into the bushes. Officer Jones pursued, caught McInnis, handcuffed him, and waited for Police Chief Joseph Bullock to arrive. After Chief Bullock arrived, Officer Jones retrieved the weapon that McInnis ditched during the pursuit, a black .40-caliber Glock pistol. Officers questioned McInnis about why he fled the scene and about the shooting. He denied any involvement in the shooting and explained that he ran from the police because he believed there was a warrant out for his arrest. Two of Walker's uncles, who claimed to have spoken with Walker before he went to

---

[1] At first, the Prentiss Police Department believed the two calls were about unrelated shootings, but the police officers soon realized differently.

the hospital, confirmed that McInnis was not involved in the shooting and identified Loftin as the shooter.  Moreover, police officers were familiar with McInnis, having stopped him many times, and recognized the Glock as the type of weapon he always carried.  Accordingly, Chief Bullock concluded that McInnis had no connection to the shooting, released him, and returned his Glock.

Officer Jones and Chief Bullock then headed to Loftin's house.  When the officers arrived, Loftin met them in his driveway and told them that he shot Walker in self-defense.  Notwithstanding Loftin's explanation, the officers arrested him for aggravated assault.

After interviewing Walker at the Hospital, Chief Bullock completed a factual statement and affidavit to secure a search warrant of Loftin's home and vehicle.  In executing the warrant, officers located Loftin's gun, two spent shell casings, Loftin's cell phone, and drug paraphernalia.  Chief Bullock also obtained and executed a search warrant for Walker's vehicle, which yielded only the bullet that Loftin fired at Walker.  Chief Bullock did not discover any weapon in Walker's vehicle.  Later that evening, Chief Bullock interviewed Loftin.  During the interview, Loftin gave both a verbal and written statement admitting that he shot Walker but reaffirming that he did so in self-defense.

On April 19, 2017, two days later, Chief Bullock procured a warrant for Loftin's arrest on aggravated assault charges.  The supporting affidavit stated that Loftin "did purposely, knowingly, and feloniously attempt to cause serious bodily injury to Dontarious Walker by . . . shooting [him] in the upper portion of the left arm with a .357 Smith & Wesson handgun . . . ."  The affidavit nowhere mentions Loftin's assertion that he shot Walker in self-defense or that police recovered a weapon near the scene of the shooting

matching the description of the one Loftin alleged Walker brandished before Loftin shot him. The State released Loftin after he made bail.

A grand jury later indicted Loftin for aggravated assault. At trial, Loftin's defense counsel presented his self-defense theory to the jury. Moreover, the jury heard testimony about the weapon that McInnis threw into the bushes. Walker testified that he did not own a gun and did not give a gun to McInnis on the day of the shooting. At first, the jury could not reach a unanimous verdict; the judge then gave the jury a *Sharplin* charge, which is Mississippi's alternative to an *Allen* charge. Eventually, the jury returned a unanimous guilty verdict and the court sentenced Loftin to five years in prison and five years of supervised release. Loftin subsequently filed a motion for a new trial based on the court's faulty *Sharplin* charge. The court granted the motion for a new trial. Before the retrial, the State moved to *nolle prosequi* the charges in part because the victim was no longer in Mississippi. The court granted the State's motion to dismiss.

## B.

Loftin sued the City of Prentiss, Chief Bullock, and Officer Jones under 42 U.S.C. § 1983, alleging that: (1) Chief Bullock and Officer Jones violated his Fourth Amendment rights by arresting him without probable cause on April 17, 2017; (2) the affidavit supporting the arrest warrant signed by Chief Bullock intentionally or recklessly omitted material information and that, as a result, he is liable under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978); and (3) the City of Prentiss is liable under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S Ct. 2018 (1978), based on its policies and customs that allegedly cause citizens to be arrested without probable cause and for the City's failure to train officers on how to make arrests with probable cause. Loftin also brought a state-law malicious-prosecution claim against Chief Bullock.

At the conclusion of discovery, the defendants moved for summary judgment on all claims. The district court granted summary judgment, concluding that (1) Chief Bullock and Officer Jones did not arrest Loftin without probable cause and that they would nevertheless be entitled to qualified immunity; (2) the information Chief Bullock omitted from the affidavit supporting Loftin's arrest was not material; and (3) the City of Prentiss is not liable because Loftin failed to establish an underlying constitutional violation. The defendants subsequently moved for attorneys' fees. The district court obliged, ultimately awarding the defendants $79,798.69 in attorneys' fees. Loftin appealed.

## II. Standard of Review

This court reviews a district court order granting summary judgment *de novo*. *Hyatt v. Thomas*, 843 F.3d 172, 176-77 (5th Cir. 2016) (citation omitted). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). In determining whether a genuine dispute of material fact exists, this court views "all facts and evidence in the light most favorable to [the nonmovant] and draw[s] all reasonable inferences in [the nonmovant's] favor." *Voss v. Goode*, 954 F.3d 234, 237 (5th Cir. 2020) (citation omitted).

This court reviews a district court order awarding attorneys' fees for abuse of discretion. *Fessler v. Porcelana Corona de Mex., S.A. de C.V.*, 23 F.4th 408, 415 (5th Cir. 2022) (citing *Torres v. SGE Mgmt., LLC*, 945 F.3d 347, 352 (5th Cir. 2019)). "A district court abuses its discretion if it (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law;

or (3) misapplies the law to the facts." *Id.* (quoting *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016)).

## III. Discussion

On appeal, Loftin advances five arguments. First, that Officer Jones and Chief Bullock arrested him without probable cause and that they are not entitled to qualified immunity. Second, that Chief Bullock intentionally or recklessly omitted material statements in the warrant affidavit, resulting in a warrant lacking probable cause. Third, that the City of Prentiss is liable under *Monell*. Fourth, that he established a material fact issue on his state-law malicious-prosecution claim. Finally, that the defendants are not entitled to attorneys' fees. We discuss each argument in turn.

## A.

First, Loftin argues that Officer Jones and Chief Bullock violated clearly established Fourth Amendment law by arresting him without probable cause. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[A]rrests are 'seizures' of 'persons'" and, therefore, "must be reasonable under the circumstances" to comply with the Fourth Amendment. *District of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018) (citation omitted). A warrantless arrest is reasonable if the officer has "probable cause to believe that a criminal offense has been . . . committed." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593 (2004) (citations omitted).

Probable cause for a warrantless arrest exists "when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'" *Texas v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)). To

determine whether probable cause existed for an arrest, the court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 800 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661-62 (1996)). Critically, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 2335 n.13 (1983). Thus, probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 1103 (2014).

Officer Jones and Chief Bullock arrested Loftin for aggravated assault without first securing a warrant. A person commits aggravated assault in Mississippi if he "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Miss. Code Ann. § 97-3-7(2)(a)(ii). At the time of Loftin's arrest, Officer Jones and Chief Bullock were aware of the following undisputed facts: (1) an unidentified person called in a shooting near Greasy Line; (2) one person was injured in the shooting; (3) bystanders at the scene of the shooting identified Loftin as the shooter; (4) Loftin himself called the Prentiss Police Department to confess that he shot someone and wanted to make a statement; and (5) after arriving at Loftin's house, Loftin again admitted to shooting Walker and claimed that, because Walker brandished a weapon, he did so in self-defense. These facts are undeniably sufficient for a reasonable person to conclude that Loftin had committed aggravated assault.

Loftin disputes this conclusion, arguing that the above-stated facts do not support probable cause because he consistently maintained that he shot Walker in self-defense and the officers had no evidence suggesting otherwise. He relies on *Thomas v. City of Galveston*, 800 F. Supp. 2d 826 (S.D. Tex.

2011), for the proposition that "under some circumstances a police officer's awareness of the facts supporting a defense can eliminate probable cause." *Id.* at 836 (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003)). Even if that were the law in this circuit,[2] however, the necessary predicate is absent here:  A suspect's declaration of innocence is not a fact supporting a defense. And a soon-to-be arrestee's naked assertion of self-defense under these circumstances does not vitiate probable cause.[3]  Otherwise, every suspect for

---

[2] This court has repeatedly refused to opine on whether "facts supporting the existence of an affirmative defense are relevant to the determination of probable cause." *Piazza v. Mayne*, 217 F.3d 239, 246-47 (5th Cir. 2000) (per curiam); *see also Johnson v. Norcross*, 565 F. App'x 287, 291 (5th Cir. 2014) (unpublished); *United States v. Craig*, 381 F. App'x 459, 461 (5th Cir. 2010) (unpublished).

[3] *See, e.g.*, *Wesby*, 138 S. Ct. at 588 ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."); *Id.* at 592 ("[I]nnocent explanations—even uncontradicted ones—do not have any automatic, probable-cause-vitiating effect."); *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1221 (10th Cir. 2020) (citation omitted) ("[A] soon-to-be arrestee's bare proclamations of innocence do not" dissipate probable cause); *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) (observing that "'[t]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause,' *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause"); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 n.6 (11th Cir. 1990) ("[The police officers] were not required to forego arresting [the plaintiff] based on the initially discovered facts showing probable cause simply because [the plaintiff] offered a different explanation."); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) ("A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."); *Thompson v. Olson*, 798 F.2d 552, 556 (1st Cir. 1986) (Brown, J., sitting by designation) ([H]aving once determined that there is probable cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car.").

On this point, an analogy to the grand jury proceeding seems apt. "[A] grand jury's finding of probable cause to think that a person committed a crime 'can be [made] reliably without an adversary hearing.'" *Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 1103 (2014) (alteration in original) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 120, 95 S. Ct.

a litany of violent crimes could avoid, or delay, arrest by simply proclaiming self-defense. Thus, Officer Jones and Chief Bullock had probable cause to arrest Loftin.

Officer Jones and Chief Bullock would nevertheless be entitled to qualified immunity. Even if an officer arrests someone without probable cause, qualified immunity immunizes the officer from suit unless that "officer had fair notice that [his] conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004) (per curiam). "Fair notice requires clearly established law." *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020). The onus is on the plaintiff to show that the law is so clearly established that "every reasonable official" in the defendant-official's shoes would know not to engage in the complained-of conduct. *Wesby*, 138 S. Ct. at 590. To do that here, Loftin would have to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment" by arresting someone without probable cause. *Id.* (quotation omitted). Loftin does not even attempt to identify a case where a court found that an officer violated the Fourth Amendment in similar circumstances. It is not enough to invoke the general principle that the Fourth Amendment prohibits a warrantless arrest without probable cause. *Id.* Therefore, Officer Jones and Chief Bullock would be entitled to qualified immunity even if they lacked probable cause for the initial warrantless arrest.

---

854, 866 (1975)). The prosecutor need not present exculpatory evidence, *United States v. Williams*, 504 U.S. 36, 51, 112 S. Ct. 1735, 1744 (1992), or allow confrontation and cross-examination of its witnesses, *Gerstein*, 420 U.S. at 121-22, 112 S. Ct. at 867. By the same token, the facts that Loftin points to here do nothing to undermine Officer Jones's and Chief Bullock's determination that probable cause existed to arrest him for aggravated assault.

**B.**

Second, Loftin contends that the warrant affidavit signed by Chief Bullock omitted material information, resulting in Loftin again being arrested without probable cause.  In general, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."  *Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (quoting *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)).  But the independent-intermediary doctrine is not absolute. The chain of causation remains intact if the officer taints the intermediary's decision by "deliberately or recklessly provid[ing] false, material information for use in an affidavit" or "mak[ing] knowing and intentional omissions that result in a warrant being issued without probable cause."  *Anokwuru v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021) (quoting *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc)).  "To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause."  *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) (citation omitted).

Here, Chief Bullock's warrant affidavit provided that:  "Joshua Evans Loftin on April 17, 2017 did purposely, knowingly and feloniously attempt to cause serious bodily injury to Dontarious Walker by . . . . shooting [him] in the upper portion of the left arm with a .357 Smith & Wesson handgun . . . ."  Those facts, albethey somewhat general, plainly support a finding of probable cause.

Loftin complains that Chief Bullock's affidavit omitted information relating to his claim of self-defense and to the gun McInnis ditched while

fleeing from the scene of the crime, which matched the description for the weapon that Walker allegedly brandished. But even if the warrant affidavit included that information, it would still satisfy the low probable-cause threshold. As explained, a suspect's declaration of innocence does not vitiate probable cause. Moreover, Loftin far overstates the exculpatory value of the fact that McInnis fled the scene of the crime carrying a weapon that matches Loftin's description of the weapon that Walker allegedly brandished. Officers familiar with McInnis knew that he regularly carried a Glock— perhaps the most popular handgun in the United States. And bystanders at the scene told officers that McInnis was not involved in the shooting. Any intimation that Walker handed off his Glock-like firearm to McInnis before going to the hospital is purely speculative. Thus, a reconstructed affidavit with the information that Loftin complains Chief Bullock omitted would support probable cause.

What is more, a complete affidavit would include other information that police gathered after the initial arrest. For example, a complete affidavit would state that Loftin armed himself and chased Walker down after Walker drove by Loftin's house playing loud music. Moreover, it would disclose that Walker denied having a weapon during the confrontation. If anything, these additional facts would only strengthen the already solid basis for probable cause. We therefore conclude that Chief Bullock did not omit material facts from the warrant affidavit.

## C.

Third, Loftin asserts that the City of Prentiss is liable under *Monell* for Fourth Amendment violations described above. But without a predicate constitutional violation, there can be no *Monell* liability. *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (citing *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)). Because Loftin failed to demonstrate any

constitutional violation relating to either his April 17th or April 19th arrests, the associated *Monell* claims must also fail.

## D.

Fourth, Loftin contends that he created a material fact issue that precluded summary judgment on his state-law malicious prosecution claim. To show malicious prosecution in Mississippi, Loftin must prove the following elements:

> (1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the insistence of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of.

*Bearden v. BellSouth Telecomms., Inc.*, 29 So. 3d 761, 764 (Miss. 2010) (citation omitted). Loftin cannot show want of probable cause. Therefore, his malicious-prosecution claim cannot succeed.

## E.

Finally, Loftin argues that the district court erred in awarding the defendants attorneys' fees. Under 42 U.S.C. § 1988(b), a prevailing party in a § 1983 case may seek reasonable attorneys' fees. A court may only award attorneys' fees to a prevailing defendant in a § 1983 case if "the plaintiff's underlying claim was frivolous, unreasonable or groundless." *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009) (quoting *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1053 (5th Cir. 1998)).

Loftin has not shown that the district court abused its discretion in granting attorneys' fees. The district court reasonably concluded that Loftin's case lacked a factual basis because the undisputed facts, namely, that

No. 21-60611

Loftin admitted to officers that he shot Walker and that bystanders identified him as the shooter, "clearly demonstrated that [Officer Jones and Chief Bullock] had probable cause to arrest [Loftin] for aggravated assault."

AFFIRMED.