# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2024

Lyle W. Cayce
Clerk

_____

No. 22-30687

_____

Renee Pipkins; Everitt Pipkins; Theron Jackson;
LaWhitney Johnson; Adriana Thomas; Reginald Autrey;
Darryl Carter; Theresa Hawthorne; Diane Johnson,

*Plaintiffs—Appellants*,

*versus*

James E. Stewart, Sr., *in his official capacity*,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:15-CV-2722

_____

Before Clement, Haynes, and Oldham, *Circuit Judges*.

Per Curiam:

Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc, the petition for rehearing en banc is DENIED. On our own motion, we withdraw our prior opinion, 98 F.4th 632, and issue the following in its place.

Plaintiffs Darryl Carter, Diane Johnson, and Theresa Hawthorne reported for jury duty in Caddo Parish, Louisiana, and were struck during *voir dire*. Plaintiffs claim their strikes violated the Fourteenth Amendment's

No. 22-30687

Equal Protection Clause. The district court rejected that claim at summary judgment. We affirm.

I.

Carter, Johnson, and Hawthorne are Black citizens of Caddo Parish, Louisiana. All three served as venirepersons in 2015. Caddo Parish prosecutors peremptorily struck all three.

In April 2015, Carter reported for jury duty in a case styled *State v. Odums*. Carter alleges he "was the only juror on his panel asked if he knew Odums, the Black defendant in the case." Blue Br. 6. Carter further alleges he did not know Odums and that the prosecutor struck him anyway. According to the record, however, the prosecutor asked numerous jurors whether they knew the defendant. And according to the prosecutor's notes, Carter expressed bias against evidence from Shreveport.

Johnson also reported for jury duty in *State v. Odums*. Johnson alleges she gave the same answers as a white venireperson—both had been the victim of car theft—but the prosecutor only struck Johnson. Again, however, the record is more complicated. Johnson's jury questionnaire revealed that she "or [a] close family member" had been convicted of a felony, ROA.2018, and the prosecutor's notes indicated Johnson showed bias against the police department. The defense counsel in *State v. Odums* filed a motion for a *Batson* challenge, but the state court denied the motion.

In June 2015, Hawthorne reported for jury duty in *State v. Carter*. The prosecution did not ask Hawthorne any direct questions before striking her. But Hawthorne, in colloquies with defense counsel, indicated she had preconceived notions about firearm possession, and believed the defendant was in court "for a reason." ROA.5995.

No. 22-30687

Plaintiffs joined an ongoing litigation challenging the Caddo District Attorney's alleged custom of peremptorily striking Black venirepersons on the basis of race. Plaintiffs sued District Attorney James E. Stewart, in his official capacity, under 42 U.S.C. § 1983.

The district court dismissed all Plaintiffs except Carter, Johnson, and Hawthorne. The District Attorney then moved for summary judgment. The district court granted the motion. Plaintiffs timely appealed. Our review is *de novo. Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

## II.

## A.

An official-capacity suit against a local officer, like the Caddo Parish District Attorney, is a suit against the local government itself. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, local government entities can be held liable for (1) constitutional violations (2) for which the "moving force" was (3) an official policy or "governmental custom." *Id.* at 690–91, 694 (quotation omitted). It is well settled that "without a predicate constitutional violation, there can be no *Monell* liability." *Loftin v. City of Prentiss*, 33 F.4th 774, 783 (5th Cir. 2022) (citing *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020)); *see also, e.g.*, *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017).

The relevant predicate constitutional claim sounds in the Equal Protection Clause. While "[a]n individual juror does not have a right to sit on any particular petit jury, . . . he or she does possess the right not to be excluded from one on account of race." *Powers v. Ohio*, 499 U.S. 400, 409 (1991). To establish an Equal Protection violation based on a discriminatory peremptory strike, a plaintiff must make a prima facie case that the "peremptory strike[] w[as] made on the basis of race." *Flowers v. Mississippi*, 588 U.S. 284, 302 (2019). Prosecutors may then respond by offering a race-

3

neutral explanation for the peremptory strike. *See Batson v. Kentucky*, 476 U.S. 79, 97 (1986) ("Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. . . . [T]he prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." (citations omitted)). We review that explanation "in light of all of the relevant facts and circumstances" to determine whether the race-neutral explanation was pretextual, asking whether the prosecutor's actions were instead "motivated in substantial part by discriminatory intent." *See Flowers*, 588 U.S. at 302–03 (citation omitted); *see also Foster v. Chatman*, 578 U.S. 488, 499–500 (2016) (discussing the *Batson* framework).

## B.

In this case, Plaintiffs cannot establish a predicate constitutional violation. Without a viable *Powers* claim, their *Monell* claim fails too.

Caddo Parish prosecutors offered race-neutral explanations for each Plaintiff's dismissal. For Carter, the prosecutor noted that he expressed bias against evidence from Shreveport. For Johnson, the prosecutor highlighted that Johnson or her family member had been convicted of a felony and she might be biased against the police department. And for Hawthorne, the prosecutor found Hawthorne's colloquies with defense counsel problematic because those colloquies revealed bias against the defendant. These facts sufficiently explain each juror's dismissal without reference to race.

Moreover, we are not convinced any of these reasons was mere pretext for a race-based dismissal. In considering whether an explanation was pretextual, we may consider (1) "statistical evidence . . . in the case," (2) evidence of "disparate questioning," (3) "side-by-side comparisons" of dismissed Black jurors and accepted white jurors, (4) "a prosecutor's misrepresentations of the record," (5) "relevant history of the State's

peremptory strikes in past cases," or (6) "other relevant circumstances." *See Flowers*, 588 U.S. at 301–02. Here, Plaintiffs rely in part on (2) disparate questioning and (3) side-by-side comparisons. But, as noted above, only Carter contends that he was subjected to targeted questioning, and the prosecutor clarified that he asked the same questions to each venire panel. And a side-by-side comparison of Johnson's questionnaire with those of the white jurors accepted by both sides shows that none had a felony history like hers or her family's. *Compare* ROA.2012–25 (juror questionnaires) *with* ROA.2301–03 (notes indicating which jurors were struck or accepted in *Odums*).

Plaintiffs therefore primarily rely on factors (1) and (5) to rebut the DA's race-neutral reasons. But neither can overcome the race-neutral reasons for Plaintiffs' dismissals. As to statistical evidence, *Flowers* held that prosecutors can create an inference of racial discrimination where, in five out of six trials, prosecutors repeatedly used all or almost all their peremptory strikes to excuse (1) all Black venirepersons, (2) all Black venirepersons, (3) 15 of 16 eligible Black venirepersons, (4) 11 of 16 Black venirepersons, evidently running out of peremptory strikes, and (5) 5 of 6 Black venirepersons. *Flowers*, 588 U.S. at 289–92, 305. But this case is far, far afield. Here, the Caddo Parish prosecutors in both *Odums* and *Carter* had peremptory strikes left over, yet numerous Black jurors served on both juries. *See* La. Code Crim Proc. art. 799. Thus, *Flowers* provides no support to Plaintiffs' case.

Plaintiffs' proffered statistical study fares no better. The study critically omits any controls for individualized reasons a juror might be excused. It therefore shows only general numbers, with no nuance to tell us whether the struck jurors shared characteristics other than race with Plaintiffs—characteristics (like bias) that might provide a race-neutral basis for a peremptory strike. Without greater context, numbers alone cannot

No. 22-30687

prove discriminatory motive. *Cf. Milliken v. Bradley*, 433 U.S. 267, 280 n.14 (1977) ("[T]he Constitution is not violated by racial imbalance . . . without more."). At a minimum, Plaintiffs' evidence cannot show that despite the prosecution's race-neutral explanations, the strikes were nonetheless "motivated in substantial part by discriminatory intent." *Flowers*, 588 U.S. at 303 (quotation omitted).

Without an underlying Equal Protection claim, Plaintiffs' *Monell* claim must fail. AFFIRMED.