**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 99-60919
_____

ROSE M. THOMAS, Individually and as
Administratrix of the Estate of Erica
Renee Thomas, Deceased, and the Heirs
at Law of Erica Renee Thomas, Deceased,

Plaintiff-Appellant,

versus

THE GREAT ATLANTIC AND PACIFIC TEA
COMPANY, INC., doing business as
Sav-A-Center,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

November 27, 2000

Before KING, Chief Judge, RICHARD D. CUDAHY,[*] and WIENER, Circuit
Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Rose M. Thomas ("Thomas"), the mother of

five-year-old Erica Renee Thomas who was killed by a drunk driver

late one afternoon, brought this "dram shop" action against

Defendant-Appellee The Great Atlantic & Pacific Tea Co., Inc.

("Sav-A-Center"), a retail business that sold alcoholic beverages

---

[*] Circuit Judge of the Seventh Circuit, sitting by
designation.

to the visibly intoxicated driver approximately two hours before the tragic accident.  The district court granted Sav-A-Center's motion for summary judgment after concluding that Thomas's case was infirm on the element of causation.  On appeal, Thomas argues that she adduced enough summary judgment evidence, albeit circumstantial, to raise a genuine issue of material fact regarding causation.[1]  Agreeing with Thomas that summary judgment was improvidently granted, we reverse and remand.

## I.

### *Facts and Proceedings*

At 5:15 p.m. on November 22, 1995, Carol Kientz, while driving under the influence of alcohol, struck and killed young Erica as she was walking alongside the road near her home. That morning, at approximately 11 a.m., Kientz and her boyfriend (now husband) Rickey Lea purchased a six-pack of beer from an Exxon convenience store.  According to Lea, Kientz drank two of these beers between 11 a.m. and 12:30 p.m.  Lea averred that the couple then went to the home of Kientz's mother, where they remained for several hours. Lea claims that, although beer and liquor were available, neither he nor Kientz drank any alcoholic beverages while they were there.

Two hours before the accident, at approximately 3:15 p.m.,

---

[1] Thomas further contends that the district court erred in denying her "motion for reconsideration of final judgment," which was correctly treated by the district court as a motion to alter or amend under Fed.R.Civ.P. 59(e).  Because we agree with Thomas on her first point of error, we need not reach the question of the district court's denial of her Rule 59(e) motion.

2

Donna Kay Walker, a Sav-A-Center employee, sold Kientz a package of beer.[2] Even though Mississippi law prohibits the sale of alcoholic beverages "to any person who is visibly intoxicated,"[3] Walker nevertheless sold Kientz the beer, after which Walker told Kientz that "I hope [you are] not driving, and if [you are], be careful."

After leaving the Sav-A-Center, Kientz and Lea stopped by the home of a friend, Derrick Breerwood, on their way to the Tax Assessor's office. According to Lea, Kientz had nothing to drink while at Breerwood's home. At approximately 4:45 p.m., Kientz and Lea arrived at the Tax Assessor's office where two employees observed that Kientz was extremely intoxicated. These employees described Kientz as "sloppy drunk," "staggering," "stumbling," and as having "slurred speech." When Kientz and Lea left the Tax Assessor's office, they purchased more beer, this time at a convenience store "like a Magic Mart." Lea maintains, however,

---

[2]The amount of beer sold to Kientz is in dispute. According to Kientz's deposition testimony and affidavit, she purchased a twelve-pack of Old Milwaukee. The Sav-A-Center cashier, Donna Walker, likewise testified that she sold Kientz a twelve-pack. Lea, however, testified that a six-pack of Michelob Dry was purchased. The receipt indicates only that "Old Milwaukee cans" were purchased for the price of a six-pack.

[3] MISS. CODE ANN. § 67-1-83 (1991). See also MISS. CODE ANN. § 67-1-53, which prohibits the sale of alcohol "to any person visibly or noticeably intoxicated." Mississippi's "dram shop" statutes do provide a safe harbor for licensed sellers of alcohol who *legally* sell alcoholic beverages to persons who, due to intoxication, cause injury, death, or property damage. See MISS. CODE ANN. § 67-1-73. Thomas's suit is predicated on the *illegal* sale of alcohol to a "visibly intoxicated" person, however, so the statutory limits on liability are inapplicable.

that although he was drinking heavily throughout the day, Kientz had imbibed only two of the beers purchased at the Exxon store that morning and that she had nothing else alcoholic to drink throughout the course of the four-to-six-hour period leading up to the fatal accident. According to Lea, Kientz drank none of the Sav-A-Center beer, none of the magic Mart beer, and nothing alcoholic at either her mother's house or Breerwood's house.

Kientz and Lea drove away from the "Magic Mart," in separate vehicles. Minutes later, at 5:15 p.m., Kientz struck and killed Erica. All that took place in November 1995.

Kientz was charged with and subsequently pleaded guilty to felony driving while under the influence for causing Erica's death. In January 1999, Kientz was sentenced to five years in prison.

As administratrix of Erica's estate and representative of her heirs at law, Thomas filed a complaint in the Circuit Court of Harrison County, Mississippi. The complaint alleges that Sav-A-Center was negligent in selling alcoholic beverages to Kientz in violation of MISS. CODE ANN. §§ 67-1-83, 67-3-53, and 67-3-73, and that this negligence proximately caused or contributed to the death of Erica Thomas. Sav-A-Center timely removed the case to federal court based on diversity jurisdiction.[4]

After completion of discovery, Sav-A-Center moved for summary judgment, contending that Thomas could not prove causation, an

___

[4]See 28 U.S.C. §§ 1332(a), 1441(a)-(b).

4

essential element of her case.  Sav-A-Center asserted more specifically that Kientz did not drink any of the beer sold to her by its employee, that as such the admittedly illegal sale of alcohol could not have contributed to Kientz's intoxication, and that the beer sold to Kientz by Sav-A-Center thus could not have been a substantial factor in the death of Erica Thomas.

Mississippi's "dram shop" act makes clear that the consumption of alcoholic beverages, and not the sale, service, or furnishing of such beverages, is the proximate cause of any injury inflicted by an intoxicated person upon himself or another person.[5]  Mississippi thus requires a showing that the intoxicated person actually consumed the alcoholic beverages before liability will attach to the seller of the beverages.  Mississippi's dram law thereby differs from those of other states, such as Texas, which do not explicitly require proof of actual consumption.[6]

As noted, the court granted Sav-A-Center's motion for summary judgment and subsequently denied Thomas's Rule 59(e) motion for

---

[5]See MISS. CODE ANN. § 67-3-73.

[6]See, e.g., TEX. AL. BEV. § 2.02(b) ("Providing, selling, or serving an alcoholic beverage may be made the basis of a statutory cause of action under this chapter . . . upon proof that (1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was obviously intoxicated to the extent that he presented a clear danger to himself and others; and (2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered."); see also Smith v. Sewell, 858 S.W.2d 350, 355 (Tex. 1993) (noting that in order for liability to attach to a seller of alcoholic beverages, the intoxication of the recipient of the beverages must be the proximate cause of the injury).

5

reconsideration.  This appeal ensued.

## II.

## *Analysis*

### *I. Standard of Review*

We review a grant of summary judgment *de novo*, applying the same well-known standard as the district court.[7]  When reviewing a grant of summary judgment, we must review the record as a whole, but must disregard all evidence favorable to the moving party that the jury is not required to believe.[8]  That is, we give credence to evidence favoring the nonmoving party as well as that evidence supporting the moving the party that is uncontradicted and unimpeached, at least to the extent that such evidence comes from disinterested witnesses.[9]

### B.  *Issues*

This appeal presents the narrow question whether direct evidence, however suspect it may be, inevitably trumps circumstantial evidence for purposes of summary judgment. Specifically, we must decide whether a defendant is entitled to summary judgment when the plaintiff has adduced strong circumstantial evidence to establish an essential element of her

---

[7]See Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

[8]See Reeves v. Sanderson Plumbing Products, Inc., ___ U.S.___,120 S.Ct. 2097, 2110 (2000) (citations omitted).

[9]See id.

claim, and the defendant, in contrast, has offered evidence that, although direct, is weak or highly suspect.  Under the instant circumstances, we answer that question in the negative and rule that sufficient summary judgment evidence exists in the record for a jury to resolve the issue of causation in favor of Thomas, particularly in light of the apparent mendacity of the witnesses on whose testimony Sav-A-Center relies.

1. *Thomas's Proof of Negligence by Circumstantial Evidence*

Under well-established Mississippi law, negligence may be proved by circumstantial evidence, provided that the circumstances are sufficient to take the case "out of the realm of conjecture and place it within the field of legitimate inference."[10]  If proof of causation is to be established circumstantially, the evidence must be sufficient to make the plaintiff's asserted theory *probable*, not merely *possible;* and it is usually for the trier of fact to say whether the proffered circumstantial evidence meets this test.[11] As the issue of proximate or contributing causation is likewise one for the trier of fact, summary judgment is improper when the plaintiff has advanced enough circumstantial evidence to take her claims out of the realm of "mere conjecture" and plant them in the

---

[10]See K-Mart Corp. v. Hardy, 735 So.2d 975, 981 (Miss. 1999).

[11]See Leflore County v. Givens, 754 So.2d 1223, 1230 (Miss. 2000).

solid ground of "reasonable inference."[12]

Lacking a witness who was in the company of Kientz and Lea at all relevant times, Thomas must rely on circumstantial evidence to demonstrate the existence of a jury question on causation. Specifically, Thomas maintains that Kientz could not possibly have reached the level of intoxication at which she appeared to be at the Tax Assessor's office unless she had consumed some of the beer purchased at the Sav-A-Center. In support of her argument, Thomas points to (1) the testimony of third-party witnesses to demonstrate that Kientz was considerably more intoxicated at the Tax Assessor's Office than at the Sav-A-Center; (2) the deduction that Kientz's blood alcohol level had to have been sufficiently high at the time of the accident to warrant a felony charge of driving under the influence; (3) the fact that Kientz had a strong incentive to lie in her affidavit, which was obtained while she was awaiting trial on charges grounded in the very same fact questions; (4) the testimony of Kientz to the effect that she has to consume a "little more than a [twelve]-pack" before anyone can tell that she has been drinking, and that two beers would not affect her; and (5) the testimony of Kientz and Lea that Kientz did not drink any alcohol after leaving the Sav-A-Center despite the availability or acquisition of such beverages.

We are persuaded that Thomas's circumstantial evidence is

---

[12]See, e.g., Snapp v. Harrison, 699 So.2d 567, 570 (Miss. 1997).

sufficient to establish the existence of a genuine issue of material fact whether Kientz consumed any of the beer purchased at the Sav-A-Center. Specifically, we conclude that Thomas has shown a basis in the evidence from which a jury could reasonably infer that Kientz's level of intoxication increased throughout the afternoon, that Kientz must have consumed a large volume of alcohol to have been as visibly drunk as she was by late afternoon, and that such volume must have consisted in significant part of some of the Sav-A-Center beer, which could only have been consumed by Kientz during the time between its 3:15 p.m. sale at the Sav-A-Center and Erica's death two hours later.

2. *Credibility of Sav-A-Center's Witnesses*

Sav-A-Center nevertheless insists that its direct evidence incontrovertibly establishes that Kientz did not drink any of the beer purchased from the Sav-A-Center on the day of the accident. We disagree. Mississippi law identifies the consumption of alcoholic beverages, and not its sale, as the proximate cause of any injury inflicted by an intoxicated person.[13] Therefore, argues Sav-A-Center, by presenting direct evidence that Kientz did not consume any of the Sav-A-Center beer, it has demonstrated a complete failure of proof concerning an essential element of Thomas's claim. Sav-A-Center asks us, in effect, to manufacture a per se direct evidence rule that would create a much safer harbor

---

[13]See MISS. CODE ANN. § 67-3-73.

9

for purveyors of alcoholic beverages than the Mississippi legislature has seen fit to provide. This we cannot do.

Sav-A-Center's direct evidence consists solely of (1) Kientz's affidavit, in which she avers that "I did not drink beer purchased from the Sav-A-Center store, or any other beverage containing alcohol, purchased at the Sav-A-Center store on November 22, 1995," and (2) the deposition testimony of Lea, which corroborates Kientz's affidavit. Thomas, however, has adduced evidence that seriously undermines both the testimony of Lea, who was Kientz's boyfriend and future husband and who admits to having been drinking heavily throughout the day of the fatal accident, and the affidavit of Kientz, which was obtained while she was under indictment and awaiting trial. Thomas points out correctly that with a criminal trial approaching, any admission by Kientz to drinking a substantial amount of beer — particularly the Sav-A-Center beer, which would have to have been consumed within the two-hour period immediately preceding the accident — would have severely jeopardized any chance Kientz had of prevailing at her criminal trial. Kientz's credibility thus becomes highly suspect; she was anything but an entirely disinterested witness despite the fact that she is not a party to Thomas's civil action. Similarly, given his own heavy drinking prior to and during all critical times and his close personal relationship to the drunk driver, Lea's credibility would be subjected to skeptical scrutiny by any finder of fact.

10

Of course, mere "metaphysical doubt" about material facts is insufficient to preclude a grant of summary judgment.[14] And, just as plainly, a motion for summary judgment cannot be defeated solely by conclusional allegations that a witness lacks credibility.[15] Nevertheless, when the circumstances are conducive to lying, well-supported suspicion of mendacity may serve as a legitimate basis for the factfinder's reasonable inferences concerning the ultimate facts at issue.[16] Here, Kientz's own testimony — not to mention the fact that her blood alcohol level was sufficiently high to warrant a felony charge of driving under the influence — undermines any realistic likelihood that (a) she was not drunk or (b) she was as drunk as she appeared — and getting drunker by the hour — but had consumed only two beers some four to six hours earlier and nothing thereafter.

Conversely, if Kientz's and Lea's testimony is credible, significant portions of it severely compromise Sav-A-Center's own "alternate source of alcohol" theory. Both Kientz and Lea maintained that, after she drank two of the beers purchased from the Exxon store between 11 a.m. and 12:30 p.m. on the day of the

---

[14]See Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[15]See, e.g., Curl v. International Business Mach. Corp., 517 F.2d 212, 214 (5th Cir. 1975)

[16]See Reeves, 120 S.Ct. at 2108 (noting that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation, particularly if "disbelief is accompanied by suspicion of mendacity").

11

accident and some five hours before it occurred, Kientz did not drink any alcohol, from any location, at any time. In addition, Kientz herself stated that she would have to consume a "little more than a [twelve]-pack" before someone could tell she had been drinking, and that two beers would not affect her; yet witnesses at the Sav-A-Center and the Assessor's Office testified that she was visibly inebriated, and more so at the Assessor's Office than when she bought the beer at the Sav-A-Center. We agree with Thomas that when questions about the credibility of key witnesses loom as large as they do here, summary judgment is inappropriate.

In reversing summary judgment and remanding for trial, we decide only that Thomas has presented sufficient summary judgment evidence to withstand Sav-A-Center's motion for summary judgment; we take no position on Thomas's ultimate ability to prove her case by a preponderance of the evidence. We are satisfied that when circumstantial evidence supporting the nonmoving party is this strong, and the only direct evidence supporting the moving party is this suspect, the merits of plaintiff's case — hinging here on the element of causation — must be determined by a trier of facts.

### III.

### *Conclusion*

For the reasons explained above, the district court's grant of summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

12

REVERSED AND REMANDED