# United States Court of Appeals
# for the Fifth Circuit

---

22-20644

---

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2024

Lyle W. Cayce
Clerk

Akeem Bagley,

*Plaintiff—Appellee*,

*versus*

Rudy Guillen,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1335

---

Before Graves, Higginson, and Ho, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

Two established principles of law govern this qualified immunity appeal. First, it may be objectively reasonable under certain circumstances for police officers to use physical force when a person refuses to comply with an officer's lawful commands—but not after that person has begun to comply. Second, to the extent that any material fact dispute remains after viewing the facts in light of the available video evidence, the court should deny summary judgment on grounds of qualified immunity.

These principles require us to permit the excessive force claim presented in this case to proceed. At a minimum, the video evidence permits a jury to infer that the officer used force after Plaintiff had already begun to comply. If anything, the video suggests a possible fact dispute as to whether he was *ever* non-compliant to begin with. We accordingly dismiss the appeal for want of jurisdiction.

## I.

This appeal stems from a series of encounters between Akeem Bagley and members of the Harris County Constable's Office on May 30, 2019.

The first encounter took place during a police effort to cite drivers for parking too close to a county railroad. Bagley received one of those citations. Officer Rudy Guillen, the sole defendant in this appeal, did not give Bagley his ticket, but participated in the ticketing effort.

The second encounter took place at a nearby gas station. Shortly after receiving his parking ticket, Bagley drove to the gas station. Several officers, including Guillen, were there when Bagley arrived. The parties dispute whether Bagley followed the officers or happened to go to the same gas station. Either way, after Bagley arrived at the station, he and Guillen entered a heated exchange about his ticket. Bagley began filming the exchange on his cell phone. He can be heard shouting at Guillen and questioning the legitimacy of his ticket.

The officers eventually left the station. Bagley continued to film as he got into his car. "This is what we doing," he said to himself, before he pulled out of the gas station and drove in the same direction as the officers. Bagley continued to record while driving, occasionally muttering to himself about the officers' driving behavior. After approximately three minutes, the police cars turned left. Bagley also turned left. Still recording, he

commented on the officers' failure to use a turn a signal.  At the same time, his car emitted a noise that sounds like a turn signal.  Following the turn, one of the police cars activated its sirens.  Bagley stated to himself, "I gotta go this way, so you can pull me over all you want to."  He then pulled to the side of the road and rolled down his window.

What transpired at this traffic stop is the core dispute in this case. Led by Guillen, the officers approached Bagley, who remained in his car with the window rolled down.  All events are captured on video by Bagley, who continued recording, and they are corroborated by the video taken by Guillen's body-worn camera.  The following exchange between Guillen and Bagley took place:

- Guillen:  "Put your hands on the steering wheel."
- Bagley moves his left hand onto the steering wheel.
- Guillen:  "Let me see your driver's license.  Let me see your driver's license."
- Bagley:  "For—could I ask what's the reason?"
- Guillen:  "Let me see your driver's license, sir, that's all I'm asking you.  You better comply with me."
- Bagley:  "I'm asking what's the reason."
- Guillen:  "If you [do] not, I'm gonna arrest you.  Let me see your driver's license."
- At this point on Guillen's video, Bagley can be seen moving his left hand toward his pocket.
- Bagley:  "What do you need to see my driver's license for?"
- Guillen:  "Let me see your driver's license, sir."
- Bagley:  "If there's not—what's the traffic stop that you pulled me over for?"
- Guillen:  "Let me see your driver's license, sir."

- Bagley: "If there's no reason, then—I didn't break any laws right now. I used every turn signal. I do not have to give you my driver's license."
- Guillen: "You did not use the turn signal."
- Bagley: "Yes I did. You not—"

This exchange lasted approximately thirty seconds. At that point, Guillen opened Bagley's car door and instructed him multiple times in quick succession to "[g]et out the car. Get out the car. Get out the car." Bagley unbuckled his seatbelt, muttering "man," and exited the car. While Bagley was retracting his seatbelt and before he was fully out of the car, Guillen deployed a taser in Bagley's direction but did not injure him.

Once Bagley had exited the car, Guillen, still pointing the taser at him, instructed him: "Turn around. Put your hands behind you." Bagley turned to face his car but moved his hands in front of himself. Guillen knocked Bagley's phone from his hands over Bagley's protests. He then pressed the taser into Bagley's back and deployed it.

Bagley's video ends following the tasing, but Guillen's bodycam footage shows what happened next. Guillen continued commanding Bagley to put his hands behind his back. Bagley fell to the ground, where he was handcuffed by another officer.

All told, fifteen seconds elapsed between Guillen's first order to leave the car and the successful tasing, and eight seconds between Bagley leaving the car and that tasing.

After the tasing and Bagley's arrest, a magistrate judge found probable cause that Bagley had committed the misdemeanor offense of interference with public duties. The State of Texas later requested that the

court dismiss the action for lack of probable cause. No further criminal proceedings are reflected in the record.

Bagley then sued Guillen under 42 U.S.C. § 1983, alleging excessive force, unlawful arrest, and illegal detention in violation of the Fourth Amendment. Guillen moved for summary judgment on all claims. The district court granted qualified immunity with respect to the unlawful arrest and illegal detention claims. But the court denied qualified immunity as to Bagley's excessive force claim. Guillen timely appealed the denial of qualified immunity.

## II.

We begin by stating the legal standards that govern this qualified immunity appeal.

We review the denial of qualified immunity at the summary judgment stage *de novo*. *See, e.g.*, *Flores v. City of Palacios*, 381 F.3d 391, 394 (5th Cir. 2004). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). Factual allegations arising out of events captured on video, however, are viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

Officers are entitled to qualified immunity from suit unless the plaintiff "has adduced sufficient evidence to raise a genuine issue of

material fact suggesting [the officers'] conduct violated an actual constitutional right," and the officers' actions were "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). *See also, e.g.*, *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021). Our court has "routinely rel[ied] on our own cases to determine whether a rule of law has been clearly established." *Boyd v. McNamara*, 74 F.4th 662, 670–71 (5th Cir. 2023). *See id.* at 670 n.4, 671 (collecting cases). *See also, e.g.*, *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (determining "clearly established" law based on "the law of this circuit"); *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 341–42 (5th Cir. 2020) ("[A] number of our opinions . . . conclude that these principles were the clearly established law."); *Izen v. Catalina*, 382 F.3d 566, 574 (5th Cir. 2004) (determining "clearly established federal law" based on "the law of this circuit").

## III.

We agree with the district court that Bagley has presented sufficient evidence of excessive force to defeat qualified immunity at the summary judgment stage. At the time of the conduct in question, it was clearly established that an officer may not use force on a suspect who is complying with his commands. *See, e.g.*, *Darden v. City of Fort Worth*, 880 F.3d 722, 728–30 (5th Cir. 2018); *Newman v. Guedry*, 703 F.3d 757, 761–64 (5th Cir. 2012) (objectively unreasonable for officers to injure a man whose "behavior [does] not rise to the level of active resistance") (internal quotation mark omitted); *see also Joseph*, 981 F.3d at 342 ("Officers engage in excessive force when they physically strike a suspect who is not resisting arrest."). As we have long held, "[c]laims of excessive force are fact-intensive" and "depend[] on the facts and circumstances of each particular case." *Newman*, 703 F.3d at 761. "[R]elevant considerations include the severity of the crime at issue, whether the suspect posed an immediate

threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Id.* (cleaned up).

Naturally, officers may use force in ways "that corresponded to [a suspect's] escalating verbal and physical resistance." *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012). But where a suspect initially resists, force "must be reduced once [he] has been subdued." *Joseph*, 981 F.3d at 335. Once a suspect is "subdued" and "no longer resisting, an officer's subsequent use of force is excessive." *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015). *See also Joseph*, 981 F.3d at 341 ("continuing to inflict force despite [a suspect] committing no crime, posing no threat, and giving no active resistance" violates clearly established law); *Newman*, 703 F.3d at 764 n.8 (officer "should have known that he could not continue to shock the suspect with the taser after he was no longer resisting arrest") (cleaned up). An officer cannot use force against a citizen who has "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command." *Newman*, 703 F.3d at 762, 764.

Bagley has presented sufficient evidence of excessive force to warrant denial of qualified immunity at the summary judgment stage. To begin with, he was pulled over for failing to use a turn signal. At most, this is a minor traffic violation. *See, e.g.*, *Ducksworth v. Landrum*, 62 F.4th 209, 220 (5th Cir. 2023) (Oldham, J., concurring in part and dissenting in part) ("Even assuming Ducksworth committed a crime, it was at most failing to leave the car wash when Welch commanded him to do so. Welch cites no authority to suggest such a 'crime' is severe enough to warrant tasing a man. Even on the (aggressive) assumption that Ducksworth could be arrested, he posed no threat."). And the car noise heard on video when Bagley made the turn could permit a jury to infer that he did use a turn signal.

Moreover, Bagley unambiguously complied with Guillen's command to exit and turn toward his vehicle. Yet Guillen tased him anyway—at first unsuccessfully while Bagley's seatbelt was retracting, and again successfully as Bagley was turned toward the car.

For his part, Guillen maintains that Bagley had not placed his hands behind him as directed. But the video evidence permits the inference that Guillen had already begun tasing him well before he gave Bagley a reasonable opportunity to comply.

Guillen also contends that tasing alone is insufficient to constitute excessive force, at least in the absence of some lasting physical injury. But the video evidence permits a jury to conclude that the tasing caused Bagley significant pain. And that's sufficient to state a claim of excessive force. *See id.* at 219–20 ("The videos show Ducksworth screaming in agony, as anyone would, when he's tased. . . . That's injury."). As our court has repeatedly observed, "'as long as a plaintiff has suffered "some injury," even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.'" *Solis v. Serrett*, 31 F.4th 975, 982 (5th Cir. 2022) (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017)).

In sum, the video evidence permits (if not compels) a jury to conclude that Bagley was attempting to comply with Guillen's commands at the time he was tased. That's sufficient to overcome qualified immunity at the summary judgment stage. Accordingly, we dismiss the appeal for want of jurisdiction.