# United States Court of Appeals for the Fifth Circuit

No. 23-50879

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2025

Lyle W. Cayce
Clerk

Joshua Timothy McClain,

*Plaintiff—Appellee*,

*versus*

Dustin Delgado,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:22-CV-272

_____

Before Jones, Barksdale, and Ho, *Circuit Judges*.

Per Curiam:

Texas Game Warden Dustin Delgado arrested Joshua McClain for driving while intoxicated after observing his truck swerve and conducting field sobriety tests. McClain later sued Delgado for false arrest. The district court denied Delgado qualified immunity. But because McClain did not carry his burden to show Delgado violated his constitutional rights, we reverse.

No. 23-50879

## I.

In March 2020, Delgado pulled McClain over for swerving. He stopped McClain after observing him "quickly jerk" his truck to the right shoulder and "cross the solid white line several times." McClain apologized and stated, "I'm sorry, I was messing with my radio." Delgado asked to perform Standardized Field Sobriety Tests, and McClain agreed.

Delgado performed three tests for "scientifically validated clues of alcohol impairment." First, he administered the horizontal gaze nystagmus (HGN) test, which tracks involuntary jerking of the eyes as they gaze to the side. Delgado observed all six possible clues of intoxication on this test. Second, he administered the walk-and-turn test, observing two of eight possible clues of intoxication. Lastly, he administered the one-leg stand test and observed no possible clues of intoxication. Delgado placed McClain under arrest for driving while intoxicated. After the arrest, Texas Trooper Dallon McKay conducted the HGN test and confirmed Delgado's results. McKay remarked that "what [Delgado] saw, is the same thing I just saw;" to which McClain replied, "I don't doubt it, maybe I've got something going on."

McClain was taken to the hospital for a blood test. That test did not show the presence of any alcohol or drugs. And the County Attorney did not prosecute McClain.

McClain sued under 42 U.S.C. § 1983. He made claims of false arrest and malicious prosecution against Delgado. Delgado moved for summary judgment on both claims, arguing that he was entitled to qualified immunity. The district court granted the motion for the malicious prosecution claim but denied it for the false arrest claim. Delgado appealed.

## II.

The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral-order doctrine. *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020). "We review legal conclusions, materiality determinations, and the scope of clearly established law de novo." *Id.* Summary judgment is proper where there is no genuine dispute of material fact. FED. R. CIV. P. 56(a).

Once qualified immunity is asserted, the burden "shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). In false arrest cases, the plaintiff must show that no reasonable officer would have made the complained-of arrest. *Loftin v. City of Prentiss*, 33 F.4th 774, 781 (5th Cir. 2022). When video evidence is available, the court should consider "the facts in the light depicted by the videotape." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quotation omitted).

McClain cannot establish that a genuine dispute of material fact exists as to whether Delgado's conduct violated the Fourth Amendment.

First, Delgado had reasonable suspicion for the traffic stop— McClain's swerving toward the right shoulder. *See United States v. Estrada*, 459 F.3d 627, 630–31 (5th Cir. 2006) (applying the *Terry v. Ohio* reasonable suspicion standard to traffic stops). McClain concedes this point in his complaint, stating "Delgado had only reasonable suspicion to stop" him and that McClain told "the officer he was messing with his radio which is to his right, which is the direction the vehicle jerked." The dissent argues that this concession is taken out of context. But not so. To argue that Delgado lacked probable cause for an arrest, McClain offers that he had "only reasonable suspicion"—the requirement for a constitutional traffic stop.

3

And on bodycam video, McClain did not dispute that he crossed the line, but more than once offers an excuse for why he might've done so—messing with the radio. McClain nodded in agreement when Delgado mentioned his "jerking the wheel to the right . . . several times." While talking to McKay, McClain repeated the story: "[Delgado] said I was going across the line, and I told him I might've gone across it when I changed the radio station." And at the hospital, McClain reaffirmed the radio caused any jerking.

So we are not determining whether McClain jerked, how many times, or the significance of any lane departures, as the dissent contends we do. We are merely taking McClain at his word on video and in the pleadings. And by doing so, we find it undisputed that Delgado had reasonable suspicion for the stop.

Second, during the stop, Delgado developed probable cause to arrest McClain. "A warrantless arrest is reasonable if the officer has probable cause to believe that a criminal offense has been committed." *Loftin*, 33 F.4th at 780 (quotation omitted). This standard "is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* Here, McClain must prove that no reasonable officer could have believed that Delgado had probable cause for his arrest. *See Loftin*, 33 F.4th at 781–82 ("The onus is on the plaintiff to show that the law is so clearly established that every reasonable official in the defendant-official's shoes would know not to engage in the complained-of conduct."). *See also District of Colombia v. Wesby*, 583 U.S. 48, 63 (2018) ("The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). He is unable to do so.

4

Delgado observed all six possible clues on the HGN test and two of eight possible clues on the walk-and-turn test. Record evidence from the National Highway Traffic Safety Administration—and a concession from McClain's counsel at oral argument that the tests have a high accuracy rate for alcohol impairment—shows that the clues observed by Delgado would indicate with a high likelihood that McClain was under the influence of alcohol.

McClain does not dispute that his performance on the HGN and walk-and-turn tests would support probable cause. And it is undisputed that Trooper McKay confirmed Delgado's results on the HGN test.

Instead of challenging that McClain's performance on the tests would create probable cause or that McKay confirmed Delgado's results, McClain (and the dissent) raises multiple immaterial fact disputes. McClain relies on an expert report alleging errors in the performance of the test. But this assertion does not create a factual dispute sufficient to deny summary judgment. Officers may rely on reasonable mistakes of fact and still receive qualified immunity. *See Crostly v. Lamar Cnty.*, 717 F.3d 410, 423 (5th Cir. 2013). *See also Loftin*, 33 F.4th at 781-82. And McClain's expert does not conclude that no reasonable officer could have found anything other than sobriety. McClain also raises a challenge to Delgado's credibility as an officer with evidence of two of Delgado's previously-dismissed arrests. But this argument ignores that McKay confirmed Delgado's findings. And finally, McClain argues that potentially false statements in Delgado's probable cause affidavit prevent qualified immunity. But these alleged false statements are all immaterial. Like the alleged errors in the test administration and McClain's arguments about Delgado's credibility, the contents of the probable cause affidavit do not "affect the outcome of the suit under the governing law." *Crostly*, 717 F.3d at 422.

No. 23-50879

Because it is undisputed that Delgado had reasonable suspicion to stop McClain and probable cause to arrest him, there is no violation of his constitutional rights.  Thus, McClain has not carried his burden to overcome Delgado's assertion of qualified immunity by establishing a genuine dispute of material fact.

Accordingly, we reverse the district court's denial of Delgado's motion for summary judgment.

No. 23-50879

Rhesa Hawkins Barksdale, *Circuit Judge*, dissenting:

Pursuant to this interlocutory appeal's contesting the denial of a summary-judgment motion, the majority holds movant Dustin Delgado, a Texas game warden, is entitled to qualified immunity, based on its deciding Joshua McClain did not meet his burden to show, *inter alia*, that Delgado violated McClain's Fourth Amendment right against false arrest (the first of the two-prong test for qualified immunity; the second is whether the right was clearly established when the conduct at issue occurred).

To the extent Delgado challenges the district court's conclusions regarding *genuinely disputed* facts, we lack jurisdiction to review those conclusions. And because those *genuinely disputed* facts are *material* to the existence of probable cause, we lack jurisdiction over this interlocutory appeal. The majority, however, for unknown and perplexing reasons, chooses not to address this critical issue.

In the alternative, genuine disputes of material fact attach to both prongs of the qualified-immunity test, precluding summary judgment for Delgado. Despite paying lip service to this controlling standard for summary judgment *vel non*, the majority treats McClain's burden as if a judgment for a trial, rather than a summary judgment, is being reviewed.

I dissent.

## I.

McClain filed this civil-rights action under 42 U.S.C. § 1983 against Delgado, claiming false arrest and malicious prosecution, in violation of the Fourth Amendment (made applicable to the States through the Fourteenth). Delgado moved for summary judgment, asserting qualified immunity against both claims. The district court granted summary judgment against the malicious-prosecution claim but denied it for the false-arrest

7

claim, concluding, for that claim, that genuine disputes of material fact precluded granting qualified immunity to Delgado.

This interlocutory appeal concerns only his being denied qualified immunity against the false-arrest claim. The following recitation is based on the summary-judgment record, including Delgado's lengthy body-camera video. (His vehicle did not have a dashboard camera.)

The underlying circumstances giving rise to this appeal involve game warden Delgado's arresting McClain on 24 March 2020 for driving while intoxicated (DWI). According to Delgado, he stopped McClain when he observed McClain's vehicle "jerk" to the right and cross the solid white line onto the shoulder of the road several times. The approximately one-hour-and-25-minute body-camera video, however, does not begin until Delgado stopped to approach McClain's stopped vehicle. In other words, the video does not show the "jerking" reason Delgado provided McClain for stopping him.

As the majority notes at 2, McClain apologized and stated he was adjusting his radio as a possible explanation for any erratic driving. Whether, and to what degree, McClain jerked his vehicle is disputed, as discussed *infra*.

Delgado asked McClain if there were any alcoholic beverages in his vehicle or whether he had recently consumed any alcohol, and McClain said no. In his incident report prepared on 7 April 2020, two weeks after the arrest, Delgado noted that, during this initial encounter, he observed McClain's eyes were bloodshot and his speech slurred. The state of McClain's eyes are not readily apparent in the video from Delgado's body camera; but, as shown in the video, his speech was extremely clear and coherent.

After asking McClain for the second time whether he had consumed any intoxicating substances and receiving the same response ("no"),

Delgado asked McClain if he would perform the Standardized Field Sobriety Tests (SFSTs), and McClain agreed. Delgado concluded that McClain failed the horizontal-gaze nystagmus (HGN) test and the walk-and-turn (WAT) test, exhibiting six of six possible clues and two of eight possible clues, respectively. Delgado observed no possible clues for the one-leg stand test.

Despite concluding that McClain failed the HGN and WAT tests, Delgado did not arrest him immediately after administering them. Instead, he asked McClain for the third time whether he had consumed any intoxicating substances, which McClain again denied. Following this exchange, Delgado returned to his vehicle and called Trooper McKay, with the Texas Department of Public Safety (TDPS), for backup. Although Delgado testified in his deposition that he had already decided to arrest McClain at this point, he explained that he called for backup because he had never "run into a situation like this where a possible [DWI subject had no] . . . odor of alcohol or alcohol emitting from the subject or even a visible . . . alcoholic beverage[]".

While waiting for backup, Delgado returned to McClain and asked to search his vehicle, to which McClain consented. For the fourth time, Delgado asked McClain whether he had consumed any intoxicating substances, and McClain again said no. Shortly thereafter, Delgado stated to McClain that, regardless of whether he searched McClain's vehicle, he did not believe McClain could safely operate the vehicle, and informed him he was under arrest for DWI. Delgado then asked McClain whether he would consent to a blood test, and he agreed.

Around this time, but after McClain had been arrested, Trooper McKay arrived. Like Delgado, McKay was equipped with a body camera. Delgado informed McKay that he administered the SFSTs and concluded McClain was intoxicated. Delgado asked McKay to re-administer the HGN

test to confirm Delgado's conclusions while Delgado searched McClain's vehicle. After conducting the test, McKay confirmed Delgado's results. Meanwhile, Delgado's search of McClain's vehicle yielded no alcoholic beverages, illegal drugs, or prescription medication.

After concluding his search of McClain's vehicle, Delgado took him to a nearby hospital for a blood test. Delgado's body camera stopped recording approximately 17 minutes after arriving at the hospital. Again, the video lasted almost an hour and 25 minutes. While waiting for the hospital to administer the test (and while Delgado's body camera was still recording), McClain informed Delgado that he regularly took an antidepressant, and that he had taken the medication the previous night. (As stated in Delgado's opening brief on appeal, after the body camera stopped recording, McClain called his wife to confirm that the medication was Sertraline (a generic brand of Zoloft).) Once the hospital obtained a blood sample (approximately one hour after the arrest), Delgado took McClain to the Limestone County jail.

On 24 April 2020, a month after McClain was arrested, TDPS issued the results for his *alcohol screening* to Delgado, which did not show the presence of alcohol. And, almost nine months after the arrest, TDPS on 16 January 2021 issued the results for the *toxicology screening* to Delgado; the results were negative for any drugs. On 19 January 2021, just two days after receiving these results for the two screenings, the Limestone County Attorney declined to prosecute the DWI due to lack of evidence.

## II.

As noted, Delgado challenges the district court's denial of his qualified-immunity-based-summary-judgment motion against the false-arrest claim. The denial of a summary-judgment motion based on qualified immunity is "immediately appealable under the collateral order doctrine *to the extent that it turns on an issue of law*". *Lytle v. Bexar Cnty.*, 560 F.3d 404,

408 (5th Cir. 2009) (emphasis added) (citation omitted). "Accordingly, we have jurisdiction for this interlocutory appeal *if* it challenges the *materiality* of factual issues, but lack jurisdiction *if* it challenges the district court's genuineness ruling—that *genuine issues* exist concerning *material facts*." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis in original) (citation omitted).

"Where the district court has determined that *genuine issues of material fact* preclude a determination of qualified immunity", as it did in this instance, "we have jurisdiction only to address the legal question of whether the genuinely disputed factual issues are *material* for the purposes of summary judgment". *Lytle*, 560 F.3d at 408 (emphasis added). Stated differently, the only issue before our court on this interlocutory appeal is "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for the purposes of summary judgment". *Buehler v. Dear*, 27 F.4th 969, 979 (5th Cir. 2022).

For the reasons that follow, the *genuine factual disputes* identified by the district court are *material* to the determination of Delgado's qualified immunity *vel non*. And as McClain correctly asserts in his brief, because the genuinely disputed facts are material, "we lack jurisdiction to consider the propriety of the summary judgment denial". *Bazan*, 246 F.3d at 493. As noted, the majority does not address this jurisdictional bar, despite it being the threshold question in determining whether this appeal truly presents a reviewable "final decision" under 28 U.S.C. § 1291. *E.g.*, *id.* at 490–91.

In the alternative, genuine disputes of material fact attach to both prongs of the qualified-immunity test, precluding summary judgment for Delgado. Along this line, and as also noted, the majority, *e.g.* at 1 and 5,

instead treats this appeal as if it's reviewing a judgment for a trial, not the denial of a summary-judgment motion.

## A.

Summary judgment is proper "if the movant shows that there is *no genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law". Fed R. Civ. P. 56(a) (emphasis added). In denying Delgado's qualified-immunity-based-summary-judgment motion, the district court concluded that "the parties disagree on every material fact required to resolve the probable cause question". In particular, the court concluded there were *genuine factual disputes* regarding the premise for the initial traffic stop (McClain's alleged swerving); Delgado's administration and interpretation of the SFSTs; and Delgado's credibility.

In keeping with this summary-judgment standard, "we review *de novo* the district court's legal determinations as to the *materiality* of factual disputes, *but lack jurisdiction* to review its determinations that factual disputes are *genuine*". *Buehler*, 27 F.4th at 979 (emphasis added) (citation omitted). In that regard, "[a] fact is '*material*' if it '*might affect* the outcome of the suit under the governing law'". *Bazan*, 246 F.3d at 489 (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Id.* (emphasis in original).

Restated, our court cannot revisit factual disputes determined by the district court to be *genuine* by our second-guessing the strength or existence of these disputes; we only possess jurisdiction to determine whether the factual disputes identified by the court are material to the outcome of the suit based on the substantive law underlying plaintiff's claim (and, in this instance, any asserted affirmative defenses, like qualified immunity). *E.g.*, *Lytle*, 560 F.3d at 408 ("If the determination of qualified immunity *would*

*require the resolution of a genuinely disputed fact*, then that fact is material and we lack jurisdiction over the appeal.") (emphasis added).  Although the line between "permissible *materiality* review and impermissible *genuineness* review can be hazy in practice", *Buehler*, 27 F.4th at 979 (emphasis in original), making this distinction is critical, as it determines the scope of our review.

This jurisdictional rule is firmly established in both fifth circuit and Supreme Court precedent.  *See, e.g.*, *Bazan*, 246 F.3d at 490 (providing comprehensive overview of rationale for rule); *Johnson v. Jones*, 515 U.S. 304, 313–16 (1995) (discussing factors like delay, lack of finality, and comparative expertise of trial and appellate judges in ruling on existence of triable issues of fact in support of rule).  As noted in 2001 in *Bazan*, "[i]t is helpful to retrace the reasons for this jurisdictional rule".  246 F.3d at 490.

> *Johnson* held, simply, that *determinations of evidentiary sufficiency* at summary judgment are *not* immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than *whether the evidence could support a finding that particular conduct occurred*, the question decided is *not* truly "separable" from the plaintiff's claim, and hence there is *no* "final decision" under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), and *Mitchell* [*v. Forsyth*, 472 U.S. 511, 526 (1985)].  *Johnson* reaffirmed that summary judgment determinations *are* appealable when they resolve a dispute concerning an "abstract issue of law" relating to qualified immunity, typically, the issue whether the federal right allegedly infringed was "clearly established[, the second of the two-prong qualified-immunity test]".

*Id.* at 490–91 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)). In short, "we adopt the district court's articulation of *genuinely disputed facts* when determining whether these disputes are *material* to a finding of qualified immunity". *Id.* (emphasis in original) (citation omitted).

Turning to the standard for the affirmative defense of qualified immunity, the "defense alters the usual summary judgment burden of proof". *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). When, as in this instance, defendant asserts qualified immunity, the burden shifts to plaintiff to "rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law". *Id.*; *see Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) ("Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate the defense once properly raised.") (citation omitted). But, notwithstanding plaintiff's bearing the burden of rebutting the defense, the standard for reviewing a summary-judgment motion remains: "[w]e view the facts in the light most favorable to the non[movant] and draw all reasonable inferences in [his] favor". *Bagley v. Guillen*, 90 F.4th 799, 802 (5th Cir. 2024) (citation omitted).

To overcome a qualified-immunity defense, plaintiff "must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct". *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020) (citation omitted). Because the claimed constitutional violation at hand involves the Fourth Amendment right against false arrest, McClain "must show [Delgado] lacked probable cause" to establish the first prong of the qualified-immunity test. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("A warrantless arrest must be based on probable cause.") (citation omitted). And, if McClain can show Delgado lacked probable cause to arrest, he will also

satisfy the second prong of the qualified-immunity test, because it has long been clearly established that "an arrest is unlawful unless it is supported by probable cause". *Id.* at 156. Therefore, as it relates to the summary-judgment standard, if McClain can establish a genuine factual dispute regarding whether Delgado possessed the requisite probable cause to arrest, then the dispute is *material* to *both prongs* of the qualified-immunity determination.

Again, when the district court determines there are genuine factual disputes—as it did in this case—"we are limited to reviewing the *materiality* (*i.e.*, legal significance) . . . not their genuineness (*i.e.*, existence)". *Dilley v. Domingue*, 118 F.4th 671, 673 (5th Cir. 2024) (emphasis in original). "Put another way, this court lacks jurisdiction to determine whether the defendant did, in fact, engage in a certain course of conduct; it only possesses jurisdiction to examine whether that conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018) (citation omitted). Accordingly, we are limited to reviewing the *materiality* of the following, earlier-referenced *genuine* factual disputes identified by the district court: the factual premise for the initial traffic stop (McClain's alleged swerving); Delgado's administration and interpretation of the SFSTs; and Delgado's credibility.

Along that line, there is an exception to this general prohibition on our genuineness review: "we are permitted to review genuineness where, as here, video evidence is available". *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023), *cert. denied*, No. 23-1257, 2024 WL 4654965 (U.S. 4 Nov. 2024) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). Accordingly, Delgado's almost 85-minute body-camera video is of extreme importance in reviewing the genuine factual disputes because, as discussed *infra*, the video evidence supports the existence (*i.e.*, genuineness) of several of these disputes.

B.

As discussed *supra*, because the claimed constitutional violation at hand involves the Fourth Amendment right against false arrest, McClain "must show [Delgado] lacked probable cause". *Deville*, 567 F.3d at 164. Further, "evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity'". *Id.* at 165 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)).

The majority concludes at 5 that McClain failed to establish a genuine dispute of material fact for whether Delgado possessed the requisite probable cause to make the warrantless arrest, seemingly ignoring the district court's concluding numerous genuine factual disputes exist and instead accepting Delgado's version of the facts: he observed McClain swerving multiple times before pulling him over; and concluded he failed the SFSTs. But this is not the proper summary-judgment standard. Again, we view the facts in the light most favorable to the nonmovant—in this instance, McClain—and draw all reasonable inferences in his favor. *E.g.*, *Bagley*, 90 F.4th at 802. Moreover, as discussed at length *supra*, we cannot review the district court's determination that a particular factual dispute is genuine. *E.g.*, *Dilley*, 118 F.4th at 673. (To the extent we can review the genuineness of available video evidence, that evidence supports the district court's genuineness determinations regarding the factual disputes captured on video.)

Viewing the facts in the requisite light most favorable to McClain, and as stated *supra*, the district court identified numerous *genuine* factual disputes, which, taken in their entirety, are *material* to the existence of probable cause. *E.g.*, *Crostley v. Lamar Cnty.*, 717 F.3d 410, 423 (5th Cir. 2013) ("To determine the presence or absence of probable cause to arrest,

one must consider the totality of the circumstances surrounding the arrest.")
(citation omitted).  It bears repeating that we are limited to reviewing the
*materiality* of factual disputes on an interlocutory appeal from the denial of
summary judgment; we do not have jurisdiction to assess the *genuineness* (*i.e.*,
existence) of such disputes.  *E.g.*, *Dilley*, 118 F.4th at 673.

1.

First, McClain disputes the factual predicate for the initial stop—
whether, and to what degree, he swerved his vehicle. Again, McClain's
driving was not captured on video as Delgado's vehicle was not equipped
with a dashboard camera.  Delgado contends this fact is not disputed because
McClain never explicitly *denies* swerving his vehicle; but, McClain also never
explicitly *admits* to doing so.  To the extent McClain acknowledges any
erratic driving, he offers adjusting his radio as a possible explanation.  Along
that line, the magistrate judge's report and recommendation (adopted by the
district court) stated this fact was in dispute:  "Delgado's belief that McClain
does not dispute that he departed his lane several times while driving is
incorrect.  In the body cam footage submitted by both parties, McClain
disputed that he crossed the line at all".  (The district court adopted what it
termed the magistrate judge's "*findings* and recommendation".) (Emphasis
added.)

As noted, although "[t]he distinction between permissible *materiality*
review and impermissible *genuineness* review can be hazy in practice",
*Buehler*, 27 F.4th at 979 (emphasis in original), the majority's conclusion at 4
that this fact is not in dispute amounts to an improper assessment of whether
the disputed swerving occurred (*i.e.*, whether the dispute is *genuine*), which
falls outside the ambit of our jurisdiction on an interlocutory appeal from the
denial of summary judgment.  Moreover, to the extent we can evaluate the
genuineness of this factual dispute using Delgado and McClain's exchange

(captured on Delgado's body camera) as circumstantial evidence, the video evidence supports the contention that the swerving is genuinely disputed.

Whether this factual dispute is *material* (*i.e.*, legally significant) presents a closer question; but, for the reasons provided below, the dispute is material. As the majority correctly notes at 4, the standard for a traffic stop is reasonable suspicion, which is a low threshold. *E.g.*, *Rucker v. Marshall*, 119 F.4th 395, 400 (5th Cir. 2024). The majority states at 4 that McClain's complaint concedes Delgado possessed reasonable suspicion for the stop, but this "concession" is taken out of context. Both the district court and McClain erroneously referred to the standard for a traffic stop (not arrest) as probable cause, and it was in this context that McClain stated, "Delgado had *only* reasonable suspicion to stop him". (Emphasis added.)

Regardless of whether the statement amounts to a concession, conceding Delgado possessed such reasonable suspicion does not render the factual dispute irrelevant to the ultimate determination of probable cause *vel non*. As noted, a probable-cause determination requires consideration of a *totality of the circumstances* surrounding the arrest. *E.g.*, *Crostley*, 717 F.3d at 423. Instead of evaluating probable cause as a "practical, nontechnical conception" that is "not readily, or even usefully, reduced to a neat set of legal rules" as precedent requires, *Gates*, 462 U.S. at 231–32 (citation omitted), the majority's swift disposition of the swerving dispute at 4 treats the test for probable cause like a technical and discrete checklist. The majority concludes at 5 that it is "undisputed that Delgado had reasonable suspicion for the stop". But even if that is true, the dispute is still relevant to the *totality of the circumstances* surrounding McClain's arrest. For example, the level of suspicion one slight swerve over the white line would engender versus, simply, six significant swerves over the line over a period of one minute is significantly different, and therefore relevant to whether Delgado ultimately possessed the *requisite probable cause* at the time of McClain's

arrest. In short, and particularly when considered in the light of the remaining factual disputes, this dispute is material. Therefore, this genuinely disputed *material* fact precludes our having jurisdiction.

2.

Next, McClain disputes Delgado's administration and interpretation of the SFSTs—in particular, the HGN (eye) test and the WAT (walk) test. In determining this assertion does not create a factual dispute sufficient to deny summary judgment, the majority concludes at 5 that McClain did not meet his burden to "prove that no reasonable officer could have believed that Delgado had probable cause for his arrest". But, again, this is not a correct statement of his burden. His burden for summary judgment is quite different: simply to show there are genuine disputes of material fact. The underlying question in this instance is whether "the law is so clearly established that every reasonable official *in* [*Delgado's*] *shoes* would know not to engage in the complained-of conduct". *E.g.*, *Loftin v. City of Prentiss*, 33 F.4th 774, 781 (5th Cir. 2022) (emphasis added). The complained-of conduct is Delgado's arresting McClain when he did not reasonably believe he possessed the requisite probable cause, and "[t]here can be no doubt that the right not to be arrested absent probable cause was clearly established at the time of [McClain's] arrest". *Green v. Thomas*, No. 24-60314, 2025 WL 670451, at *4 (5th Cir. Mar. 3, 2025). In fact, "[i]t is hard to imagine a right more clearly established". *Id.* Put simply, every reasonable official knows that probable cause is required to make a warrantless arrest.

McClain's expert provided a report stating that Delgado improperly administered the HGN test and erroneously interpreted the WAT test. In addressing the report, the majority concludes at 6 that reasonable mistakes of fact do not preclude the defense of qualified immunity. *E.g.*, *Crostley*, 717 F.3d at 423 ("In the context of Fourth Amendment false arrest claims and

the issue of probable cause, even law enforcement officials who *reasonably, but mistakenly*, conclude that probable cause is present are entitled to immunity.") (emphasis added) (citation omitted).  This premise is correct; but, based on the prior, erroneous DWI arrests by Delgado, discussed *infra*, any mistakes in the administration of the SFSTs were arguably not reasonable.

Although the majority at 5 notes a "concession" made at oral argument in our court by McClain's counsel—that the tests have a high accuracy rate for alcohol impairment—this "concession" is premised on the tests' being performed and/or interpreted correctly, which is precisely what McClain is disputing.  Additionally, the district court concluded this fact was genuinely disputed, noting that the parties "do not agree as to whether Delgado could have reasonably believed that he conducted any of the SFSTs properly[,] [n]or do they agree with Delgado's interpretation of the results of the SFSTs".

Moreover, Trooper McKay's asserted confirmation of Delgado's interpretation of the HGN test is immaterial.  McKay did not arrive until *after McClain was arrested*; therefore, McKay's confirmation of the results has no effect on whether Delgado *reasonably* believed he possessed probable cause at the time of arrest.  *E.g.*, *Sibron v. New York*, 392 U.S. 40, 62–63 (1968) (facts to establish probable cause must be known to the officer *at the time of arrest*).  Among the numerous references to McKay's involvement, the majority notes at 2 that when McKay commented that he saw the "same thing" as Delgado, McClain replied, "I don't doubt it, maybe I've got something going on".  Presumably, the majority includes this exchange to imply that Delgado's administration of the test is not truly disputed, but as noted, any statements made to *McKay* have no bearing on whether *Delgado* reasonably believed he possessed probable cause at the time of arrest.  Arguably, Delgado's decision to call McKay and request that he *confirm*

Delgado's results after he had already decided to arrest McClain supports the contention that Delgado's actions were not reasonable, *see, e.g.*, *Crostley*, 717 F.3d at 423, particularly when viewed in the light of the following facts calling Delgado's credibility into question.

3.

Generally, at the summary-judgment stage, a court must "refrain from making credibility determinations or weighing the evidence". *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). "Nevertheless, when the circumstances are conducive to lying, well-supported suspicion of mendacity may serve as a legitimate basis for the factfinder's reasonable inferences concerning the ultimate facts at issue." *Deville*, 567 F.3d at 165 (quoting *Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000)). In other words, "[s]ummary judgment is not appropriate when questions about the credibility of key witnesses loom large and the evidence could permit the trier-of-fact to treat their testimony with skeptical scrutiny". *Id.* (citation omitted); *see also Bazan*, 246 F.3d at 492 ("Cases that turn crucially on the credibility of witnesses' testimony in particular should *not* be resolved on summary judgment.") (emphasis in original) (citation omitted). In this regard, it bears repeating that Delgado is a game warden, *not* a police officer.

In that regard, the district court concluded McClain raised genuine factual disputes regarding Delgado's credibility: "Clearly, the circumstances here are conducive to Delgado lying". In calling Delgado's credibility into question, the court pointed to disputes including: the "evidence of at least two other [factually similar] examples of DWI arrests made by Delgado that were later dismissed", as in this instance, due to insufficient evidence; and, most importantly, "evidence that Delgado made false statements in his probable cause affidavit", prepared after McClain's arrest, but on the same

day.  The majority summarily concludes these disputes are immaterial at 6, despite Delgado's version of the facts providing the *only* evidence that *could* support a probable-cause determination.  Put simply, Delgado's version of the facts determines "the outcome of the suit under the governing law", *i.e.*, the very definition of materiality.  *Bazan*, 246 F.3d at 489.

### a.

Delgado stated twice in his deposition that, prior to stopping McClain, he had never encountered a possible DWI in which he found no alcoholic beverages nor observed the odor of alcohol on the driver.  This statement, however, is incorrect, concerning the following, above-referenced two prior arrests by Delgado.

### i.

First, in November 2019, just four months before McClain's arrest, Delgado arrested an individual for DWI under similar circumstances.  As was the case with McClain, Delgado neither smelled alcohol on the individual nor observed any alcoholic beverages in his vehicle, but nonetheless decided to arrest him after concluding he failed the SFSTs.  Most importantly, the results of that individual's consensual blood test were negative for alcohol and drugs—a fact known to Delgado at the time of McClain's arrest.

### ii.

Second, in August 2019, seven months before McClain's arrest, Delgado arrested a different individual for DWI, making nearly identical observations with regard to his "bloodshot eyes" and alleged failure of the SFSTs as he did for both McClain and the November 2019 arrest.  As was

the case with both McClain's arrest and the November 2019 arrest, the blood-test results were negative for alcohol and drugs.

In sum, McClain's arrest was *game warden* Delgado's *third* DWI arrest in less than one year in which blood-test results exonerated the arrestee. This evidence greatly undermines Delgado's credibility, as it lends support to McClain's contention that, in the best light, Delgado was subjectively aware of his incompetence in administering SFSTs. It also supports McClain's alternative contention in his brief on appeal—that Delgado intentionally fabricated the results to bolster his arrest record. The majority at 6 attempts to undermine the significance of this dispute by noting that "McKay confirmed Delgado's findings". But, again, McKay's confirmation of the HGN results is irrelevant, as it occurred post-arrest.

b.

In addition to the credibility issues raised by the above-described two DWI arrests prior to McClain's, the district court concluded: "McClain has presented evidence that Delgado made false statements in his probable-cause affidavit [(PCA)]". This further undermines his credibility.

i.

Although the National Highway Traffic Safety Administration guidance clearly provides that SFSTs "are not a pass/fail test", Delgado stated in his PCA that McClain "failed" the SFSTs, neglecting to mention that McClain exhibited zero out of four clues on the one-leg stand test. Delgado neither specifies which tests he administered nor details their results, despite admitting in his deposition that he was aware that characterizing SFST results as a "fail" is inaccurate.

ii.

Additionally, Delgado stated in his PCA that McClain regularly took Sertraline, implying that this information contributed to having probable cause to arrest, even though Delgado admitted in his deposition, as well as in his opening and reply briefs on appeal, that he did not learn this information until *after* McClain's arrest (as shown in part in Delgado's body-camera video). As discussed *supra*, it is well-established that information learned post-arrest cannot retroactively support a probable-cause determination. *E.g.*, *Sibron*, 392 U.S. at 62–63. Presumably, the majority adopted Delgado's position that this factual dispute is not material to supporting the probable-cause determination as it is not mentioned in its opinion. Although Delgado, and presumably the majority, are correct in taking the position that this factual dispute has no bearing on whether Delgado possessed the requisite probable cause (as he was unaware of this fact at the time of arrest), it is material in the sense that it *undermines* Delgado's "reasonable belief" that he possessed the requisite probable cause to arrest, as it is further summary-judgment evidence that calls Delgado's credibility greatly into question. *See Deville*, 567 F.3d at 165 ("provid[ing] evidence that would allow the jury to disbelieve [the officer's] testimony" can render summary judgment inappropriate).

It is also worth noting that Delgado stated in both his summary-judgment motion and brief on appeal that McClain "was never tested for Sertraline", but this is not true. Although Sertraline is apparently not one of the drugs typically tested-for in a toxicology screening, Delgado *specifically requested* that McClain be tested for Sertraline in Delgado's Toxicology Request Submission Form.

\* \* \*

In the light of the above-described, genuinely disputed facts, as well as McClain's having provided evidence that raises very serious questions

regarding Delgado's credibility, "[s]ummary judgment is not appropriate". *Id*. Moreover, the above-addressed factual disputes are material "because the determination of qualified immunity would require the resolution of a genuinely disputed fact". *Lytle*, 560 F.3d at 408. Accordingly, our court lacks jurisdiction over this appeal.

## C.

In the alternative, to the extent our court can exercise jurisdiction to determine the materiality of these factual disputes, and for the reasons provided above, the disputes are material to the probable-cause determination. Accordingly, McClain has met his summary-judgment burden to establish genuine disputes of material fact regarding the first prong of the qualified-immunity test: the official's violation of a statutory or constitutional right. *E.g.*, *Converse*, 961 F.3d at 774.

Moreover, as discussed *supra*, because it has long been clearly established that "an arrest is unlawful unless it is supported by probable cause", *Deville*, 567 F.3d 156, McClain's establishing material factual disputes regarding the existence of probable cause likewise satisfies his summary-judgment burden on the second prong of the qualified-immunity test—whether the official's conduct was objectively unreasonable in the light of clearly established law. *E.g.*, *Samples*, 900 F.3d at 660. And, because the objective reasonableness of Delgado's conduct is a question of law, which "*cannot* be decided if there are *genuine* [*disputes*] *of material fact*", *Bazan*, 246 F.3d at 490 (emphasis in original), the district court did not err in denying Delgado's qualified-immunity-based-summary-judgment motion.

No. 23-50879

## III.

For the foregoing reasons, we lack jurisdiction over this appeal; in the alternative, genuine disputes of material fact preclude granting summary judgment based on qualified immunity to Delgado.  I dissent.